UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DENNIS THRASHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-0407 |
| | ) | |
| CITY OF GALLATIN, TENNESSEE and | ) | Magistrate Judge Bryant |
| DON BANDY, Individually and in his Official | ) | |
| Capacity as Police Chief of the Gallatin Police | ) | |
| Department, and | ) | |
| JOHN TISDALE, Individually and in his | ) | |
| Official Capacity as the Former Police Chief | ) | |
| of the Gallatin Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

## **M E M O R A N D U M**

This action is before the undersigned for all further District Court proceedings, pursuant to the consent of all parties. (Docket Entry No. 59).

Currently pending before the court is a motion for summary judgment filed by Defendants City of Gallatin, Tennessee and Don Bandy. (Docket Entry No. 74). Also pending before the court is a separate motion to dismiss and for summary judgment filed by Defendant John Tisdale (Docket Entry No. 84), and subsequently amended (Docket Entry No. 93). Plaintiff Dennis Thrasher has alleged a violation of his First Amendment and Fourteenth Amendment rights (against all parties), common law conspiracy (against Chief Bandy), intentional infliction of emotional distress ("IIED") (against John Tisdale), and a violation of the Tennessee Public Protection Act ("TPPA," also known as Tennessee's whistleblower statute)

(against the City of Gallatin).[1]

For the reasons given below, and by Order entered contemporaneously herewith, these parties' motions for summary judgment will be GRANTED with respect to Plaintiff's federal claims, common law conspiracy claim, and IIED claim.[2] The Court declines to retain supplemental jurisdiction over the state TPPA claim, and it will be DISMISSED without prejudice to being re-filed in state court.

**I. Statement of the Case**

A. Summary of the Facts

Plaintiff served as a police officer with the City of Gallatin from 1989 until his termination on June 15, 2011. (Complaint ¶ 8). Plaintiff filed this action against the City of Gallatin, Chief of Police Don Bandy ("Chief Bandy"), and former police chief John Tisdale ("Defendant Tisdale"), alleging that Plaintiff's termination stemmed from his refusal to remain silent about Defendant Tisdale's misuse of the Tennessee Informational Enforcement System ("TIES") and inappropriate racial comments made about another police officer. (Complaint ¶

---

[1]Plaintiff, in his memorandum of law in opposition to the instant motion to dismiss (Docket Entry No. 107), also alleges a conspiracy to deprive him of his Constitutional rights under 42 U.S.C. § 1985. Defendants Bandy and the City of Gallatin, in their reply brief, note with surprise that this claim had been voluntarily dismissed by the Plaintiff as recognized in a court order filed by District Judge Sharp. (Docket Entry No. 24). The claim, having already been dismissed by this Court, cannot now be resurrected.

[2]Although Plaintiff's common law conspiracy claim and IIED claim are also state claims, like the TPPA claim over which this court declines to extend supplemental jurisdiction, the undersigned believes two factors compel the Court to treat these claims differently: 1) the common law conspiracy claim depends entirely upon the viability of Plaintiff's Section 1983 claims (which this court dismisses), and 2) Plaintiff does not oppose Defendant Tisdale's motion to dismiss the IIED claim (Docket Entry No. 107, note 1).

35).

In 2008, Defendant Tisdale asked Plaintiff to run a criminal history check on Cleveland Ellis ("Ellis") using the TIES criminal history network. (Complaint ¶ 10; Docket Entry No. 103 at 2). In 2009, the Tennessee Bureau of Investigation, which maintains the TIES network, discovered that there was insufficient documentation to support the criminal history check conducted by the Plaintiff regarding Ellis. (Complaint ¶ 11). Subsequent to this discovery, Plaintiff approached Defendant regarding the Ellis search and surreptitiously recorded the ensuing conversation. (Complaint ¶ 12; Exhibits 14 & 15). Defendant Tisdale claimed that the Ellis search was associated with a series of local burglaries in which Ellis was a suspect. (Complaint ¶ 12). In the months that followed this conversation, Plaintiff claims that Defendant Tisdale began questioning his loyalty and treating him as a problem employee. (Complaint ¶ 13).

In September 2010, Defendant Tisdale suspended Plaintiff for two days over an unrelated matter involving unapproved overtime for other Gallatin Police Officers. (Complaint ¶ 15). While suspended, Plaintiff researched Ellis and discovered that he had been convicted of murdering his girlfriend in Jackson, Mississippi, and that Defendant Tisdale was serving as an expert witness in a wrongful death action related to the murder. (Complaint ¶ 17). Recalling his earlier conversation with Defendant Tisdale, Plaintiff became concerned that misleading information may have been provided to the TBI during its 2009 audit, and contacted TBI agent Connie Adkinson to "discuss his concerns." (Complaint ¶ 18).

This prompted a formal investigation into Defendant Tisdale's actions surrounding the Ellis search, which the TBI initiated in December 2010. (Complaint ¶ 19). Subsequent to the

3

start of this investigation, Plaintiff was called into a meeting with Defendant Tisdale, Commander Bill Sorrels, and Defendant Don Bandy, who was then serving as a Lieutenant with the department. (Complaint ¶ 20). During this meeting, which the Plaintiff also surreptitiously recorded, Defendant Tisdale voiced several complaints about the TBI and the TBI director. (*Id.*) Additionally, Commander Sorrels and Defendant Bandy made several racially suggestive comments about a pair of African American Colonels serving with the Tennessee Highway Patrol. (*Id.*) After Plaintiff's tapes had been released to the TBI, Commander Sorrels received five (5) days off without pay for his behavior. (*Id.*) These tapes were eventually released to the local media, which portrayed the City and the department in a very poor light. (Docket Entry No. 81, ¶ 5).

Later that December, Defendant Tisdale was placed on leave pending the completion of the TBI's investigation. On December 20, 2010, Plaintiff met twice with Gallatin Mayor Jo Ann Graves to discuss his resignation from the department, but ultimately did not resign. (Complaint ¶ 23). At the second meeting, Plaintiff informed the Mayor that he was the whistleblower responsible for sending tapes to the TBI. (*Id.*) This was the first time that anyone at the City of Gallatin was made aware of the Plaintiff's audio recordings.

In January 2011, Mayor Graves became aware of other conversations Plaintiff had recorded that extended beyond the scope of the TIES investigation. (Docket Entry No. 80, ¶ 3). Upon learning this, Mayor Graves and City Attorney Joe Thompson took separate trips to TBI offices in Nashville to listen to these additional recordings. (*Id.* at ¶ 4; Docket Entry No. 81, ¶ 5). Recognizing that the tapes jeopardized the department's relationship with the TBI, Mayor Graves met with Defendant Tisdale to express her concerns. (Docket Entry No. 81, ¶ 6). Soon

4

thereafter, Defendant Tisdale resigned from the Gallatin Police Department, and Defendant Bandy was appointed interim Chief of Police while a search for the next chief was conducted. (Docket Entry No. 80, ¶ 5; Docket Entry No. 79, ¶ 2).

At this time, the City Attorney became concerned about Plaintiff's secret recordings, and hired attorney Doug Berry to conduct an independent investigation into Plaintiff's conduct concerning the misuse of the TIES system. (Docket Entry No. 80, ¶ 6). Plaintiff was placed on administrative leave pending the outcome of this investigation. (Complaint ¶ 26). Doug Berry completed his investigation and delivered his report to Defendant Bandy on or about May 27, 2011, by which time Defendant Bandy had been promoted to full-time Chief of Police. (Docket Entry No. 79, ¶¶ 4, 1). As a result of the information contained in the report, Chief Bandy made the decision to terminate Plaintiff's employment with the department, which was communicated to the Plaintiff on June 15, 2011. (*Id.* at 4; Complaint ¶ 33).

At the time of his termination, Plaintiff was employed as a Commander in the police department, a position which served at the will of the Chief of Police. (Docket Entry No. 79, ¶ 5). Defendant Bandy has asserted that Plaintiff used his City vehicle for personal use, and that this abuse of his role as a supervisory officer was a contributing factor in his dismissal. (*Id.* at ¶ 6). Additionally, Defendant Bandy asserts that Plaintiff's secret recordings of City employees jeopardized the close working relationships within the department, and that his termination was required to preserve an efficient and effective department. (*Id.*). Plaintiff believes that these reasons were merely pretext for the ultimate cause of his dismissal: direct retaliation for his refusal to remain silent about the illegal activity of Defendant Tisdale and for providing information to the TBI regarding Commander Sorrels' inflammatory racial remarks. (Complaint

5

¶ 35). Moreover, Plaintiff avers that Defendant Tisdale, although not employed by the City of Gallatin at the time of his dismissal, acted in concert with Defendant Bandy and is therefore jointly responsible for his termination. (Complaint ¶ 37).

B. Procedural History

Plaintiff filed his initial Complaint against all Defendants on April 25, 2012. In it, Plaintiff alleged 42 U.S.C. §§ 1983 and 1985 claims for individual and conspiratorial violations of his First, Fifth, and Fourteenth Amendment rights. (Complaint ¶ 42). Plaintiff also alleged state and common law claims of retaliatory discharge and intentional infliction of emotional distress. (Complaint ¶¶ 47-48). Pursuant to an order filed with the Court on September 12, 2012, the following claims were voluntarily dismissed by the Plaintiff: (1) conspiracy under 42 U.S.C. § 1985 against all Defendants; (2) violation of Plaintiff's Fifth Amendment Rights under 42 U.S.C. § 1983 against all Defendants; (3) common law retaliatory discharge against all Defendants; (4) violation of the Tennessee Public Protection Act, T.C.A. § 50-1-304, against Defendants Bandy and Tisdale; (5) intentional infliction of emotional distress against the City of Gallatin; (6) punitive damages against the city of Gallatin. (Docket Entry No. 24). On February 20, 2013, the Court also dismissed the claim of intentional infliction of emotional distress against Defendant Bandy.

Therefore, the following claims from Plaintiff's initial complaint remain: (1) violation of Plaintiff's First Amendment Rights under 42 U.S.C. § 1983 against all parties; (2) violation of Plaintiff's Fourteenth Amendment rights under 42 U.S.C. § 1983 against all parties; (3) conspiracy against Defendants Bandy and Tisdale; (4) intentional infliction of emotional distress against Defendant Tisdale; (4) violation of the Tennessee Public Protection Act, T.C.A. § 50-1-

304, against the City of Gallatin. Defendants Bandy and the City of Gallatin filed the instant motion for summary judgment as to these remaining claims on January 21, 2014. (Docket Entry No. 74). Defendant Tisdale filed a separate motion for summary judgment on the same date. (Docket Entry No. 84).

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden lies upon the moving party to show that there are no genuine issues of material fact. *Id.* at 323. Alternatively, the moving party can satisfy this initial burden "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the movant meets this burden, the burden shifts to the nonmovant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear that burden of proof at trial." *Id.* at 322. Merely alleging a factual dispute alone is not enough to overcome a motion for summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, "there must be evidence on which the jury can reasonably find for the plaintiff." *Id.* at 252. In other words, "[t]he central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003)

7

(quoting *Anderson*, 477 U.S. at 242, 251-52).

### III. Analysis

A. Plaintiff's First Amendment Claim

Plaintiff claims that his termination was in retaliation for the exercise of his First Amendment rights. Specifically, Plaintiff asserts that he was exercising his First Amendment right to free speech when he passed along his secret recordings to the TBI, and that his termination as a result of that conduct infringes upon his First Amendment liberties. Although public employees have historically enjoyed only limited First Amendment protection, "[t]he Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Rather, in cases such as this, the central question is whether or not the employee is speaking "as a citizen . . . upon matters of public concern." *Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968). If the employee can satisfy this initial consideration, the Court's attention turns to "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418 (citing *Pickering*, 391 U.S. at 568). If the employee fails to satisfy this initial consideration, however, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* at 418 (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)).

The *Garcetti* Court further clarified this threshold consideration to mean "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes" and that therefore their speech does not

8

merit First Amendment protection. *Id.* at 421. The Court's rationale is simple: "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 421-22. Factors the courts are to consider include "the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir. 2007). Factors that may be relevant, but not necessarily dispositive, include whether or not the statements were made to individuals up the chain of command, whether "the speech was made inside or outside the workplace," and whether it "concerned the subject-matter of the speaker's employment." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540-41 (6th Cir. 2007).

The facts of the instant case suggest that Plaintiff's retaliation claim involves speech that arose pursuant to his official duties. At the time Plaintiff surreptitiously recorded conversations with his fellow officers and reported them to the TBI, it is undisputed that he was operating as a sworn law enforcement officer with the City of Gallatin, under the purview of General Order 300.03. (Docket Entry No. 102, ¶ 72). General Order 300.03(V)(B)(2) reads, in part:

> Employees who receive information about or observe incidents involving unnecessary or excessive use of force, violations of criminal statutes, misconduct or abuse of authority by any other employee will first take immediate actions to protect the citizen.

(Docket Entry No. 76-2).

Defendant Tisdale's misuse of the TIES system would appear to qualify as "misconduct or abuse of authority" under this general order. The self-policing function created by the Gallatin Police Department in General Order 300.03 is thereby established as a professional

9

responsibility of all officers, hopefully not as a daily or recurring job function, but nonetheless as an important responsibility to the public they serve. Moreover, of particular importance in the analysis of Plaintiff's speech to the TBI is the fact that the speech was rendered out of concern for the integrity of an investigation – made through the TBI's database and without sufficient documentation to withstand TBI scrutiny – that Plaintiff's name was attached to, as the officer who ran the ill-fated criminal history check at the request of his superior officer and in the exercise of his official duties. This speech, then, is appropriately categorized as follow-along from the criminal history check that had been flagged and audited by the TBI in 2009, exposing potential misconduct and abuse of authority in the handling of a single matter that had already been spotlighted as deserving of the attention of involved officials. As such, Plaintiff's reporting of Defendant Tisdale's misconduct to the TBI must be considered as "speech that owes its existence to a public employee's professional responsibilities" and is therefore unqualified for First Amendment protection. *Garcetti*, 547 U.S. at 421. Plaintiff's reporting of Commander Sorrel's inappropriate racial comments fare similarly. The Gallatin Police Department's General Order 300.02(IV)(A) requires officers to report serious complaints of misconduct, including "[c]omplaints involving allegations of civil rights violations or allegations that a member used racial or ethnic epithets." (Docket Entry No. 124). As Plaintiff's recordings of Commander Sorrel clearly fall under the scope of General Order 300.02, they must also be considered as speech "pursuant to [his] official duties" and therefore unqualified for First Amendment Protection. *Garcetti*, 547 U.S. at 421.

In response to these points, Plaintiff cites *See v. City of Elyria*, 502 F.3d 484 (6th Cir.

2007), and *Marohnic v. Walker*, 800 F.2d 613 (6th Cir. 1986).[3] Plaintiff advances two counter-arguments under these authorities: (1) that his communication directly to the TBI, outside the standard Gallatin Police chain of command, excludes the speech from his employment duties; and (2) that he also had a concurrent moral duty in reporting his superiors, which qualifies his speech for First Amendment protection. As to Plaintiff's first contention: while the fact that Plaintiff reported his findings directly to the TBI is a relevant consideration, it is not alone sufficient to determine that Plaintiff's speech merits First Amendment protection. The fact that Plaintiff reported his findings outside the immediate chain of command does not alter the fact that his reports stemmed from his official duties as a sworn Gallatin Police officer, which is the central consideration in any public employee's First Amendment claim. *Weisbarth*, 499 F.3d at 545. Moreover, unlike cases where a higher law enforcement authority is involved in the first instance on a report of corrupt practices, *e.g., See v. City of Elyria*, here the TBI unearthed the irregularity in the first place and was the agency to which continuing concerns might logically have been voiced, even though it was otherwise outside the Gallatin Police Department chain of command.

Plaintiff's second contention effectively amounts to a "dual speech" exception to *Garcetti*; i.e., that Plaintiff's concurrent moral duty to report his findings to the TBI can serve as a caveat to *Garcetti's* bright line rule regarding speech pursuant to a public employee's official duties. Although this dual speech exception has been recognized by some courts—most notably

---

[3]As explained below, the Court finds these cases distinguishable from the instant case. *See* involved a police officer's report to the FBI of wide-ranging corruption within the department, and failed to reference *Garcetti*. *Marohnic* was handed down years prior to the *Garcetti* decision and involved a revelation of graft and public corruption, made in direct response to a law enforcement investigation into the public agency.

11

the Second Circuit in *Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011)—there is no circuit court consensus on the matter, and the Sixth Circuit has not yet recognized this exception. Given the paucity of precedent in the Sixth Circuit, the undersigned declines to extend the exception in the instant case.

As Plaintiff's speech does not merit First Amendment protection,[4] it is unnecessary for this Court to weigh the countervailing interests of the Gallatin Police Department, analyze Gallatin's city policy for municipal liability, or determine Defendants Bandy and Tisdale's claims for qualified immunity.

For all of the above reasons, the Court will GRANT the motions for summary judgment with regard to Plaintiff's First Amendment claim.

## B. Plaintiff's Fourteenth Amendment Claim

Plaintiff also asserts that his termination violated his Fourteenth Amendment right to due process prior to being deprived of his property interest in his job. At the time of Plaintiff's termination, it is undisputed that he was serving as a Police Commander in the Gallatin Police Department. (Docket Entry No. 102, ¶ 55). It is also undisputed that at the time of Plaintiff's termination, the position of Police Commander was considered an "at-will employee" that could be terminated by the Chief of Police at any time. (*Id.* at ¶ 56).

The Sixth Circuit has made clear that "a public employee does not have a property

---

[4]It should be noted, however, that while Plaintiff's speech is not protected by the First Amendment, its subject matter very nearly approaches an exposé of public corruption, which has historically "deserve[d] constitutional protection." *See*, 502 F.3d at 493 (citing *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865-66 (6th Cir. 1988)). However, this Court agrees with the majority in *Garcetti* that "the powerful network of legislative enactments—such as whistle-blower protection laws" are the best recourse for "those who seek to expose wrongdoing." *Garcetti*, 547 U.S. at 426.

interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause." *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989). As Plaintiff does not dispute his status as an at-will employee of the Gallatin Police Department and has proffered no evidence to suggest that he was promised termination only upon good cause, Plaintiff cannot have a Fourteenth Amendment property interest in his job as a matter of law.

Therefore, the Court will GRANT the motions for summary judgment with regards to Plaintiff's Fourteenth Amendment claim.

C. Plaintiff's Conspiracy Claim

As Plaintiff's Section 1983 claims under the First and Fourteenth Amendments have been dismissed, this Court finds that the Plaintiff has not been deprived of a Constitutional right. As Plaintiff has not been deprived of a right, there plainly cannot exist a conspiracy between Defendants Bandy and Tisdale to deprive Plaintiff of said right. Therefore, the undersigned GRANTS Defendants' motion for summary judgment with regards to Plaintiff's conspiracy claim.

D. Plaintiff's IIED Claim

Plaintiff also alleges an IIED claim against Defendant Tisdale. (Complaint ¶ 48). As this memorandum has already noted, Plaintiff does not oppose Defendant Tisdale's motion to dismiss this claim.[5] Therefore, the undersigned GRANTS Defendant Tisdale's motion for summary judgment with regards to Plaintiff's IIED claim.

---

[5]*See* note 2, *supra* p. 2.

E.  Plaintiff's Tennessee Public Protection Act Claim

Finally, Plaintiff alleges a violation of the Tennessee Public Protection Act, T.C.A. § 50-1-304, against the City of Gallatin.  Here, Plaintiff has greater traction.  However, because Plaintiff's underlying federal claims have been dismissed on the merits, the supplemental state law whistleblower claim is subject to dismissal in the Court's discretion.  28 U.S.C. § 1367(c) provides that

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  There is a general presumption that dismissal of all federal claims should result in declining to retain supplemental jurisdiction over pendent state claims.  Musson Theatrical, Inc. v. Federal Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996).  The Court finds no reason to vary from this presumption in this case.  Accordingly, the court declines to retain supplemental jurisdiction over Plaintiff's claim under the Tennessee Public Protection Act, and DISMISSES the claim without prejudice to being re-filed in state court, where the parties may proceed with the benefit of the discovery and motions they have produced and filed before this court.

An appropriate Order will enter.

ENTERED this 30th day of September, 2014.


                                    s/ John S. Bryant
                                    JOHN S. BRYANT
                                    UNITED STATES MAGISTRATE JUDGE